UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS LEE HENDERSON, SR.,<br><br>    Plaintiff,<br><br>  vs.<br><br>DR. SMITH, et al.,<br><br>    Defendants. | 1:13-cv-00287-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM<br>(ECF No. 24.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

## I. BACKGROUND

Curtis Lee Henderson, Sr. ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on February 27, 2013. (ECF No. 1.)

On May 8, 2014, the Court dismissed Plaintiff's Complaint for failure to state a claim, with leave to amend. 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e). (ECF No. 20.) On July 16, 2014, Plaintiff filed the First Amended Complaint, which is now before the court for screening. (ECF No. 24.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been

paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id.

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

**III.    SUMMARY OF FIRST AMENDED COMPLAINT**

Plaintiff is presently incarcerated at Mule Creek State Prison in Ione, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR). The events at issue in the First Amended Complaint allegedly occurred at the California Substance Abuse Treatment Facility (SATF) in Corcoran, California, when Plaintiff was incarcerated at there. Plaintiff names as defendants Dr. Smith, Dr. Jackson, Dr. Brown, LVN Morris, LVN Gonsalez, LVN Matha, and RN Powel (collectively "Defendants"). Defendants were all employed by the CDCR at SATF at the time of the events at issue. Plaintiff's factual allegations follow.

On May 31, 2011, Plaintiff was the victim of an assault when a riot occurred at SATF and he suffered serious injuries. He was rushed to San Joaquin Community Hospital and underwent surgery to reconstruct his cheek bone. The surgery was performed by a plastic surgeon, Dr. Freman [not a defendant], and it took two plates and about ten screws to complete

the repairs. Plaintiff also had several teeth removed and suffered from a broken clavicle. The Defendants were told by Dr. Adle [not a defendant] to re-set the bone within two weeks. Defendants ignored that order for six months. Plaintiff was in constant pain, and Defendants' failure to re-set the bone violated the Eighth Amendment and California Government Code §845.6, based on inadequate medical care. For six months, Plaintiff did not receive any medical treatment, despite his pleading for medical care and his need to have the bone re-set.

Finally, on November 9, 2011, Plaintiff underwent surgery (open reduction and internal fixation of non-union right clavicle fracture utilizing five hole reconstruction plate and allograft bone graft). On November 19, 2011, 27 staples were removed from Plaintiff's right clavicle, at which time the LVN pushed too hard on his clavicle, causing two of the lateral screws to back out of the bone. Plaintiff was in extreme pain and could not move his arm. X-rays revealed that the two screws had come out of the bone. On November 22, 2011, Plaintiff was seen by Defendant Dr. David G. Smith, who took another x-ray and ordered urgent surgery. Plaintiff was left in this condition for 18 days before receiving corrective surgery.

On December 7, 2011, Plaintiff underwent surgery to replace the two lateral screws. Also a cerclage wire was used at the end of the fracture to hold the plate in place. Something went wrong during surgery that Plaintiff was not informed about, and upon returning to the prison, he could not breathe, began coughing up blood, and went into respiratory distress. He was rushed to Kaweah Delta Health Care District. On the way, the ambulance transporting Plaintiff to the hospital had a collision due to the paramedic's reckless driving, and Plaintiff had to be moved to another ambulance. Plaintiff was admitted into the cardiac care unit and underwent another surgery to repair his lung. It was discovered that Dr. Smith had hit Plaintiff's lung while doing surgery on his clavicle causing hemotysis. The third surgery was not only painful but frightening, because a bronchoscope had to be inserted in Plaintiff's nose to reach his lung. Oxygen-gel was placed in his nose, which Plaintiff had to breathe, causing him to feel like he was drowning. He then spent 3 days in intensive care. Upon returning to the prison, Plaintiff had to stay 30 days in the infirmary.

///

Plaintiff was still in extreme pain because the two lateral screws were pushing out of his bone and attempting to come through his skin. On December 22, 2011, x-rays showed that the screws had once again backed out of the bone. Plaintiff requested that another doctor remove the screws, but Dr. Smith told him he could not choose the doctor. Plaintiff explained that he was afraid because of what happened the last time. For another 6 months, Plaintiff walked around in extreme pain. He asked Dr. Smith to remove the screws because he was in extreme pain, but Dr. Smith said he could not do anything. Plaintiff asked him for pain medication but was denied.

Plaintiff asked Dr. Jackson to provide him surgery and pain medication, and he just laughed at Plaintiff. Plaintiff asked defendant LVN Matha to place him on the doctors line to see another doctor, but she stated that he didn't need medication and should deal with it. Plaintiff asked defendant LVN Gonsalez to place him on the line to see a different doctor, and she stated, "You're done," and told him she did not want to see him back at the clinic ever again.

After the fourth operation, Plaintiff was assaulted by another inmate, causing the staples at the operation site to come apart, and Plaintiff contracted a painful infection. On July 21, 2012, when Nurse Nalett [not a defendant] was changing his dressing, defendant LVN Morris stormed out of the storage room and yelled at Plaintiff, telling him he could not have any more dressing changes, because supplies cost too much to be wasted on him, and all he really wanted was to see Nurse Nalett, inferring that he was there for sexual reasons. Plaintiff informed defendant Morris that he was there for medical reasons, that his clavicle was bleeding and discharging pus. Defendant Morris then began yelling at Nurse Nalett, who was only helping Plaintiff. Sergeant S. Herberling [not a defendant] had to calm defendant Morris down, and told Morris that she did not like all of the yelling and unethical conduct. Plaintiff alleges that defendant Morris's conduct was retaliation against Plaintiff for complaints he had filed against staff for medical treatment. Plaintiff filed a complaint against defendant Morris, which was granted and determined that Morris violated policy. As a result, Plaintiff was left to change his

///

own dressing every day until the discharge stopped, and to ask other inmates for help, fearing more retaliation.

Plaintiff saw defendant Dr. Tiggs-Brown and pleaded with her for medical care, including pain medication and a soft food diet, as he had a previous order for these. He also requested to have the hardware removed, but she did nothing to help him.

On February 6, 2013, Plaintiff met defendant RN Powel at the work change gate and informed her that his administrative appeals for medical care had been granted, and the medical narcotics board had approved the request for renewal of his order for 30mg of morphine for pain. They walked to the clinic, and defendants Jackson, Gonsalez, and Morris were there. Plaintiff showed the defendants his documentation. Defendant Gonsalez told Plaintiff that on February 5, she had instructed defendant Jackson to give Plaintiff Tylenol-3 and that was it, and that he didn't need his hardware removed. Defendant Powel stated that she wouldn't help Plaintiff if she could, because the other defendants did not like the fact that he complained about his treatment, and she walked away leaving Plaintiff standing there. Plaintiff explained to defendants Jackson, Gonsalez, and Matha that he needed the plate removed, and he was told that it was only going to be temporary.

Plaintiff requests monetary damages, injunctive relief, and declaratory relief.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

### A. Medical Claim – Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060. "[E]ven gross negligence

is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

**Discussion**

Plaintiff's First Amended Complaint recites nearly the same allegations found in Plaintiff's original Complaint. Plaintiff has demonstrated that he had a serious medical need because he was the victim of an assault and suffered serious injuries to his cheek and mouth, requiring reconstruction surgery. Also, his clavicle was broken, requiring more surgery to re-set the bone. He also suffered extreme pain from the injuries, surgeries, and complications from the surgeries. Thus, the court finds that Plaintiff shows that he had a serious medical need.

However, Plaintiff fails in the First Amended Complaint, as in the original Complaint, to allege facts showing that any of the Defendants acted against him with deliberate indifference. Plaintiff has not alleged facts demonstrating that any of the Defendants acted, or failed to act, while knowing about and disregarding a serious risk to his health. According to the allegations, Plaintiff received regular treatment for his condition, including surgeries, medication, and visits with medical staff. While there were delays in his treatment, Plaintiff has not shown that the delays caused him further harm. Plaintiff suffered pain both before and after surgery, and he still suffers pain. Plaintiff alleges that he was denied pain medication, but he also alleges that at some point in his treatment, he was approved for treatment with morphine for pain. Plaintiff's allegations that he could not choose his own doctor, that he was not treated kindly during the course of his treatment, that he was subject to a vehicular accident, and that complications arose during and after surgery, do not demonstrate deliberate

indifference. As discussed above, even gross negligence or medical malpractice do not rise to the level of deliberate indifference. Plaintiff alleges that medical staff did respond favorably to his requests for surgery and medication, demonstrating a difference of opinion about his medical care, which does not constitute deliberate indifference. The fact that Plaintiff was given Tylenol-3 instead of morphine does not state a claim for relief. With respect to Plaintiff's complaints that the plates in his face, which he was told were temporary, have not been removed, Plaintiff has not shown more than a disagreement with his course of treatment. Plaintiff has not alleged that immediate removal of the plates, or other surgical hardware, is medically indicated or that any of the Defendants acted with deliberate indifference in refusing to remove the plates. Therefore, Plaintiff fails to state a cognizable Eighth Amendment medical claim.

**B.     Retaliation**

As discussed by the Ninth Circuit in Watison v. Carter:

> "A retaliation claim has five elements. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).
>
> Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action...." Brodheim, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108–09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. That the

> retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569.
>
> Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir.1984)."

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

Plaintiff alleges that he filed prison grievances against prison staff members for inadequate medical treatment, and sometime afterward defendant Morris yelled at him, accusing him of requesting medical care for improper purposes and wasting costly medical supplies. While Plaintiff has shown that adverse action was taken against him, he has not shown any causal connection between the filing of grievances and defendant Morris's conduct. Plaintiff has not shown direct evidence of retaliatory intent, nor has he alleged facts from which retaliation can be inferred. Plaintiff's allegations provide no evidence of retaliatory motive to satisfy the third element of a retaliation claim. Therefore, Plaintiff fails to state a cognizable claim for retaliation.

### C. State Law Claims

Plaintiff alleges that Defendants violated California Government Code § 845.6 when they failed to re-set his bone. Plaintiff is advised that violation of state law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In this instance, the Court fails to find any cognizable federal claims in the First Amended Complaint. Therefore, Plaintiff's state law claim fails.

### V. CONCLUSION AND RECOMMENDATIONS

The Court finds that Plaintiff's First Amended Complaint fails to state any cognizable claims upon which relief may be granted under § 1983. The Court previously granted Plaintiff

leave to amend the complaint, with ample guidance by the Court.  Plaintiff has now filed two complaints without stating any claims upon which relief may be granted under § 1983.  The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, **IT IS HEREBY RECOMMENDED** that pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e), this action be dismissed with prejudice for failure to state a claim upon which relief may be granted under § 1983, and that this dismissal be subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g).  Silva v. Vittorio, 658 F.3d 1090, 1098 (9th Cir. 2011).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 23, 2015**              **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE